UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Electricity N.H., LLC</u>
<u>d/b/a ENH Power</u>

      v.                                    Case No. 21-cv-33-PB
                                              Opinion No. 2022 DNH 036
<u>Old Dutch Mustard Co., Inc.</u>
<u>d/b/a Pilgrim Foods</u>


<u>MEMORANDUM AND ORDER</u>


This case arises from an admitted failure by Old Dutch
Mustard Company to pay in full for electricity produced by
Electricity N.H., LLC ("ENH") and delivered by Eversource.  Old
Dutch Mustard received monthly consolidated bills from
Eversource that covered the charges of both ENH and Eversource.
At some point, Old Dutch Mustard began to make only partial
payments on the consolidated bills.  In several instances it
also issued instructions to Eversource to apply its partial
payments to ENH's portion of the bills.  Eversource, relying on
a tariff approved by the New Hampshire Public Utilities
Commission ("PUC"), failed to follow Old Dutch Mustard's
instructions and instead paid itself first.

ENH later sued Old Dutch Mustard for breach of contract.
Its summary judgment motion asserts that it is owed $306,061 in
unpaid charges.  Old Dutch Mustard disputes approximately
$128,000 of the total amount claimed because it argues that

Eversource, acting as ENH's agent, improperly disregarded its instructions to apply its payments to ENH's charges.  Because I conclude that Eversource was barred from complying with Old Dutch Mustard's demand by the PUC-approved tariff, I reject Old Dutch Mustard's argument and grant ENH's motion in full.

## I.   BACKGROUND

### A.   Regulatory Framework

To understand this dispute, it is important to outline some basics that govern the provision of electricity in the State of New Hampshire.  The State regulates all public utilities, including electric utilities, through the PUC.  See N.H. Rev. Stat. Ann. §§ 374:3, 362:2.  The PUC has statutory authority to set rates for public utility services and dictate the terms of service.  See id. §§ 374:3, 378:7.

Electric utilities once had a monopoly over the supply and delivery of electricity within their designated service areas. In Re Statewide Elec. Util. Restructuring Plan, 82 N.H.P.U.C. 122, 1997 WL 998365, at *18 (Feb. 28, 1997).  That changed in the late 1990s, when, at the direction of the legislature, the PUC issued a formal order that required utilities to unbundle their services and allowed competitive energy suppliers to enter the market.  See id. at *1-3.  The restructuring of the industry left the delivery of electricity to the utilities but created retail choices for energy supply.  See id.

Today, New Hampshire customers can continue to buy energy from their electric utility, or they can choose an energy supplier in the marketplace and pay their utility only for the delivery of electricity. See id. at *2-3, *19. The supplier is paid market-based rates for energy supplied each month. See id. at *19. The utility is paid rates set by the PUC for the associated delivery services. See id. at *23. The utility's rates and terms of service are set out in a publicly available "tariff" filed with the PUC. See N.H. Code Admin. R. Puc 1603.02. The supplier and the utility may send either separate bills or a consolidated bill for both sets of services, itemized to show the unbundled services and the amounts owed for each.

**B.   Facts**

In 2017, Old Dutch Mustard contracted with ENH for the supply of electricity to its manufacturing facility in Greenville, New Hampshire. Eversource, the utility that services Greenville, delivered the electricity. ENH also engaged Eversource to perform billing, payment, and collection services on its behalf. The contract between Old Dutch Mustard and ENH specified that the supplier's monthly charges would appear on invoices issued by Eversource and that Old Dutch Mustard would remit payment for those charges to Eversource. See Doc. No. 25-1 at 6.

Old Dutch Mustard received consolidated monthly bills from Eversource that itemized the amounts owed both for the delivery services provided by Eversource and the supply services provided by ENH.  The bills instructed Old Dutch Mustard to remit payment to Eversource for the total amount due.  Eventually, however, Old Dutch Mustard began making only partial payments and accumulated a balance owed to both companies that currently stands at more than $620,000.

At times, Old Dutch Mustard sent payments to Eversource with instructions to credit those payments only to the amounts it owed to ENH.  Eversource accepted those designated payments, which totaled approximately $128,000, without protest.  But, apparently, Eversource ignored Old Dutch Mustard's payment instructions and instead applied payments based on a payment hierarchy to which Eversource and ENH agreed in a settlement agreement approved by the PUC in 2014.  See Doc. No. 25-3 at 102-09.  Under the agreement, customer payments on consolidated electricity bills must be applied in the following order:

> (1) utility outstanding deposit obligations, (2) any
> utility current payment arrangement obligation, (3)
> any utility budget billing arrangement obligations,
> (4) utility and supplier aged accounts receivables,
> with a priority for the utility aged receivables, (5)
> utility and supplier current charges, with a priority
> for the utility's current charges. . . .

Doc. No. 25-3 at 104-05.  This payment hierarchy is repeated verbatim in the tariff that has been approved by the PUC.  See

Doc. No. 28-1 at 44.  Thus, when it received payment from Old
Dutch Mustard, Eversource was entitled to pay itself before
paying ENH.  This explains why ENH's records do not reflect
receipt of the $128,000 and instead show an unpaid balance of
$306,061.33.

Seeking to recover that unpaid balance, ENH sued Old Dutch
Mustard for breach of contract.  I previously granted summary
judgment to ENH on the issue of liability but left the amount
Old Dutch Mustard owed for later determination because Old Dutch
Mustard admitted liability but disputed the amount it owes under
the contract.  ENH now moves for summary judgment on damages and
Old Dutch Mustard objects.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir.
2016).  In this context, a "material fact" is one that has the
"potential to affect the outcome of the suit." Cherkaoui v.
City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez
v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  A "genuine
dispute" exists if a factfinder could resolve the disputed fact
in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d
1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### III. ANALYSIS

ENH argues that it is entitled to summary judgment on damages because the undisputed record shows that Old Dutch Mustard owes it $306,061. Old Dutch Mustard disputes the amount owed because it does not include payments that Old Dutch Mustard instructed Eversource to remit to ENH. If Eversource ignored those instructions and instead applied the payments to its own

charges, the argument goes, ENH must seek recovery from
Eversource.

Old Dutch Mustard argues that it has a common law right to
direct how its payments are applied.  To be sure, the leading
treatise on contract law recognizes that, as a general
principle, a debtor who owes multiple debts has the right to
direct a creditor to allocate payment to a particular debt.  See
28 Williston on Contracts, § 72:2 (4th ed.).  And, as Old Dutch
Mustard points out, even if the debtor's choice of allocation
would violate a prior contract between the debtor and the
creditor, the creditor's acceptance of payment obligates the
creditor to apply the money as directed.  See id. § 72:3.  But
the treatise also recognizes that a statute that defines how
payments must be applied trumps those default rules.  See id.
§ 72:7; see also id. § 72:2 (noting that the general rule
applies "except as may be modified by statute").  Here, there is
a statutorily delegated regulatory structure that overrides the
common law rule that Old Dutch Mustard cites.

By statute, the PUC has the authority to set rates for
Eversource's services and define the terms of those services.
See N.H. Rev. Stat. Ann. §§ 374:3, 378:7.  With limited
exceptions not relevant here, the PUC also has statutory
authority to oversee competitive energy suppliers like ENH.  See
id. § 374-F:7.  The PUC's adjudicatory powers allow it to

resolve some disagreements between suppliers and utilities by
approving a just and reasonable settlement.  See id. § 541-A:31,
V(a); N.H. Code Admin. R. Puc 203.20(b).  When a dispute arose
between ENH and Eversource, among others, about the allocation
of payments on consolidated electricity bills, the PUC entered
an order approving a settlement agreement that sets forth the
present payment hierarchy that Eversource must follow.  In
short, the agreement directs Eversource to prioritize payment of
its own charges before remitting payment to ENH.  See Doc. No.
25-3 at 104-05.

     That payment hierarchy is also reflected in the tariff
Eversource filed with the PUC.  Tariffs "define the terms of the
contractual relationship between a utility and its customers."
In re Verizon New Eng., Inc., 158 N.H. 693, 695 (2009) (quoting
Appeal of Pennichuck Water Works, 120 N.H. 562, 566 (1980)).
"They have the force and effect of law and bind both the utility
and its customers."  Pennichuck Water Works, 120 N.H. at 566.
Indeed, given its unique status, "a tariff has the same force
and effect as a statute."  Verizon New Eng., 158 N.H. at 695.
"The rights and liabilities as defined by the tariff cannot be
varied or enlarged by either contract or tort. . . ."  Guglielmo
v. WorldCom, Inc., 148 N.H. 309, 313 (2002) (cleaned up).

     The tariff and the PUC order approving the settlement
agreement make plain that Old Dutch Mustard had no right to

dictate how its payments would be allocated between Eversource and ENH.  Old Dutch Mustard's ignorance of the payment hierarchy is no excuse.  See id. ("Customers are conclusively presumed to know the contents of the carrier's tariff.").  Thus, Old Dutch Mustard's argument that its directed payments that never reached ENH should be set off against the unpaid balance is meritless. Because Old Dutch Mustard presents no other arguments or evidence to controvert ENH's evidence about the sum it is owed, ENH is entitled to summary judgment on damages.

## IV.  CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment (Doc. No. 25) is granted.  The clerk of court is directed to enter judgment in favor of ENH in the amount of $306,061.33.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 17, 2022

cc:  Counsel of record